## FRANKLIN *v.* CALLAWAY, sheriff.

Under the act approved December 21, 1899 (Acts 1899, p. 78, Van Epps' Code Supp. § 6522), a mortgage dated July, 1903, given to secure money furnished to aid in making the crop for that year, is superior to the lien thereon of an older common-law judgment obtained in 1899, even though such mortgage

was not recorded until November, 1903, and after the levy of the fi. fa. on the matured crop.

Submitted May 19, — Decided June 9, 1904.

Money rule.    Before Judge Toombs.    City court of Washington.    December 16, 1903.

On March 11, 1899, Franklin obtained a judgment against Moss in a justice's court in Oglethorpe county, and on April 4, 1899, the execution thereon was entered on the general execution docket of that county.    Subsequently Moss moved to Wilkes county, and in July, 1903, gave to Armor a mortgage on his crop of that year in Wilkes county, for supplies to make the crop.    The mortgage was filed for record November 13, 1903, after the execution in favor of Franklin had been levied on corn which was "a part of said crop, but matured and gathered."    The corn was sold under that execution, and the proceeds were claimed under an execution placed in the sheriff's hands, which had been issued on the foreclosure of the mortgage in favor of Armor.    The foregoing facts appeared from an agreed statement of facts, on a rule against the sheriff.    The court directed the sheriff to pay over the fund to the mortgagee.    Franklin excepted, on the ground that the failure to file the mortgage for record before the levy made its lien inferior to that of his execution.

*J. M. Pitner*, for plaintiff.    *W. A. Slaton*, for defendant.

LAMAR, J.    The act approved December 21, 1899 (Acts 1899, p. 78), relating to the lien of mortgages on crops, given to secure the payment of money and other articles necessary to aid in making and gathering the same, is limited in its application.    It says nothing about the priority of such a mortgage over bona fide purchasers, liens to secure ordinary debts, younger judgments, or as to its rank where there are several similar mortgages on the same crop.    Nor does it say anything as to the necessity of recording, or as to the effect of a failure to record.    The solitary provision is that such mortgages for supplies shall take priority over older judgments.    Under the language of this statute, the mortgage given in July, 1903, was superior to a common-law fi. fa. entered on the general execution docket in April, 1899.    The plaintiff in fi. fa., however, contends that the legislature in using the word mortgage meant thereby one that had the usual incidents, includ-

ing proper execution and due registration. This may be true even as to crop mortgages, when the rights of subsequent lienholders or bona fide purchasers are involved. But registration looks to the future; and how can the record or failure to record a mortgage executed in July, 1903, affect the holder of a common-law judgment rendered in 1899? He had not loaned his money on the faith of the crop; recording the mortgage could not warn him, and keeping it off the record did him no harm. The judgment had no lien on the crop before it was planted. The property was brought into existence with the aid of supplies furnished by the mortgagee, which were thus somewhat in the nature of purchase-money creating the very property on which the plaintiff has levied. The legislature was dealing with a condition in which persons holding an older fi. fa. had a lien on everything owned or subsequently acquired by the defendant. There was no possible way by which the mortgage could be recorded before the lien of the judgment attached. Even if the paper had been signed in the clerk's office and immediately handed to him for registration, there would have been an instant of time between the execution and filing during which the lien of the judgment would attach. And therefore, whether the paper was recorded on the day it was executed, or months afterwards, would make no difference. Looked at from the standpoint of date and registration, the mortgage would necessarily be younger and therefore inferior to the existing judgment. To meet this situation the act declared that the crop mortgage should be superior to the older fi. fa., irrespective of its date, and regardless of the time when it was filed in the clerk's office. Besides, assuming that under the definition in the Civil Code, § 2724, the paper did not become a mortgage as to third persons until it was recorded, that condition precedent was supplied when it was actually recorded in November, 1903. ' Under the act, whenever it became a perfect crop mortgage for supplies, it took priority of an older judgment having a lien on the same crop. Compare *Rasin* v. *Swann*, 79 *Ga.* 704; *Thompson Co.* v. *Dodds*, 95 *Ga.* 754; *Achey* v. *Coleman*, 92 *Ga.* 746. The decision in *Green* v. *Franklin*, 86 *Ga.* 360, related to a mortgage executed under the Code of 1882, § 1955. The thirty days therein allowed having been abrogated by the act of 1889 (Civil Code, § 2778), the limitation suggested in *Courson*

v. *Walker*, 94 *Ga.* 175, does not modify the decision, which is otherwise directly in point.

There was a contention in the pleadings that the act of 1899 was unconstitutional in so far as it made such mortgages superior to judgments at the date of its approval. That point, however, was not argued in the brief, and was in effect abandoned.

*Judgment affirmed.　All the Justices concur.*