## DICKENSON, trustee, *v.* STULTS.

1. The Supreme Court has no authority to decide whether the trial court erred in directing a verdict, when there is no assignment of error made upon such direction.
2. On the trial of an action brought by a trustee in bankruptcy to recover an alleged preferential payment, claimed to have been made with the intention to hinder, delay, and defraud creditors, there was evidence that the payment was made, not with such intention, but bona fide, in satisfaction of a just debt secured by an unrecorded mortgage, and that there were no other lien creditors; and it did not appear that any of the creditors extended credit after the date of the mortgage. *Held*, that a verdict for the defendant was not without evidence to support it.

Argued June 22, — Decided July 13, 1904.

Complaint. Before Judge Bower. City court of Bainbridge. September 14, 1903.

*A. L. Townsend*, for plaintiff.  *A. H. Russell*, for defendant.

FISH, P. J.  On November 10, 1899, Miss I. T. Babbitt purchased from D. D. Stults his mercantile business in Bainbridge, giving him for the purchase-price thereof her nineteen promissory notes of one hundred dollars each, one due on the 10th of each month, beginning January 10, 1900, and at the time of the purchase she agreed to give him a mortgage on a house and lot in Bainbridge to secure the payment of the notes.  On December 20, 1899, she executed and delivered to him the mortgage, which was never recorded.  On October 27, 1900, she sold the stock of goods to C. C. Cliett for $3,000 cash, which was a fair price.  On the same day she paid Stults $1,080, in satisfaction of what she owed him on the notes given for the goods, and the mortgage was surrendered.  The balance of the proceeds of such sale she on the same day appropriated to the payment of some other debts.  She owed at the time about $6,000, of which $400 was by note to W. C. Bradley & Co., upon which note she paid nothing.  Her property consisted of the stock of goods, the house and lot, which was worth from $1,000 to $1,200, and store accounts valued at $500 or $600.  On February 16, 1901, W. C. Bradley & Co. et al., creditors of Miss Babbitt, filed a petition in bankruptcy against her; and she was adjudicated a bankrupt, February 14, 1902.  B. C. Dickenson, as trustee of the bankrupt, brought suit against Stults to recover the sum of $1,080, alleging that, under the national bankruptcy act, it was a preferential payment, and made for the purpose of hindering, delaying, and defrauding other creditors.  The verdict was for the defendant.  Plaintiff moved for a new trial, which was refused, and he excepted.

1. The only grounds of the motion for a new trial were, that the verdict was, (1) " contrary to evidence and without evidence to support it," (2) " decidedly and strongly against the weight of the evidence," and (3) " contrary to law and the principles of justice and equity."  The bill of exceptions recites that, " upon hearing the evidence in said case, the judge of said court directed a verdict in favor of the defendant;" but there is no assignment of error upon such direction, nor is the matter of the direction otherwise referred to in the bill of exceptions.  The only assignment of error is upon the order of the court denying a new trial.  This court has no authority to decide any question, unless it is made

by a special assignment of error in the bill of exceptions. Civil Code, § 5584; *Linder* v. *Whitehead*, 116 *Ga.* 206; *English* v. *Hill*, Ib. 415; *Kelly* v. *Strouse*, Ib. 872(9). It follows, that, under the present assignment of error we are not authorized to decide whether the court erred in directing the verdict.

2. The only question presented by the assignment of error made is, was there any evidence to authorize the verdict? Prior to the amendatory act of 1903, section 60 of the national bankruptcy act of 1898 read as follows: "A person shall be deemed to have given a preference, if, being insolvent, he has procured or suffered a judgment to be entered against himself in favor of any person or made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class. If a bankrupt shall have given a preference, within four months before the filing of a petition, or after the filing of a petition and before the adjudication, and the person receiving it or to be benefitted thereby or his agent acting therein had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and he may recover the property or its value from such person." Section 67e of the act provides: "That all conveyances, transfers, assignments, or incumbrances of his property, or any part thereof, made or given by a person adjudged a bankrupt under the provisions of this act subsequent to the passage of this act and within four months prior to the filing of the petition, with the intent and purpose on his part to hinder, delay, or defraud his creditors, or any of them, shall be null and void as against the creditors of such debtor, except as to purchasers in good faith and for a present fair consideration;" etc. It has frequently been held that the word "transfer," as used in the act, includes the payment of money. Collier on Bankruptcy (3d ed.), 421. The burden was upon the plaintiff to prove all of the essentials of a preferential transfer as defined by the act. If it be granted that the evidence required a finding that all the other elements of a preferential transfer were present in this case, we think it clear that the jury were authorized to find that it was not shown that the effect of the transfer was to enable one creditor to obtain a greater percentage of his debt than any other

creditor *of the same class.*     Stults held a mortgage on the house and lot.     There was no attack on the mortgage itself.     It is true that it was never recorded, but our statute declares that " Mortgages not recorded within the time required remain valid against the mortgagor, but are postponed to all other liens created or obtained or purchases made prior to the actual record of the mortgage."     Civil Code, § 2727.     This section was founded on the act of 1827, Prince's Digest, 166, which was in the following words: " Upon failure to record any mortgage as hereinbefore required, within the time or times hereinbefore specified for recording the same, that then, and in such case, all judgments obtained before the foreclosure of the said mortgage, and also any mortgage executed after the same, and duly recorded, shall take lien on the said mortgaged property, in preference to the said 'mortgage." And in *Hardaway* v. *Semmes*, 24 *Ga.* 305, it was held :     " If a mortgagee does not record his mortgage in three months, he risks having it postponed, to after-made mortgages, and to judgments obtained before he has foreclosed it; but this is all he risks."     In *Thompson-Hiles Co.* v. *Dodds*, 95 *Ga.* 754, it was held: " While the insolvent trader's act provides that mortgages made by the debtor after the filing of the creditors' petition, for the purpose of securing existing debts, shall be vacated, the lien of a valid mortgage executed by him before such filing is not affected thereby ; and nothing in the registry act of 1889 deprives such a mortgage of its priority over the claims of the unsecured creditors as to the property covered by the mortgage or the proceeds thereof, although the mortgage may not have been filed for record until after the filing of the creditors' petition."     The present Chief Justice, who delivered the opinion in that case, said : " Before the adoption of the act of 1889 [Civil Code, § 2778, under which mortgages take effect only from the time they are filed for record, as against the interests of third parties acting in good faith and without notice, who may have acquired a transfer or lien binding the same property], the effect of failure to record a mortgage within the time prescribed by law was to postpone it ' to all other liens created or obtained or purchases made before the actual record of the mortgage, (Code, § 1957) ; but it was never held that the effect of such failure was to postpone the mortgage to the claim of an unsecured creditor who had not obtained a judgment against the debtor.

We know of no reason for holding that the act of 1889 was intended to place creditors on any better footing in this respect than that occupied by them before." It was held in *Robinson* v. *Woodmansee*, 80 *Ga.* 249: " It was error to charge, as matter of law, 'that if the jury believed that the debtor made the mortgages attacked, and there was an understanding with the person receiving them that they should be kept off the records, for the purpose of protecting his financial credit, then they would be fraudulent as to all persons extending credit to the debtor after that date. It is for the jury to say what the intention was, and whether the mortgages were given by the debtor for the purpose of hindering, delaying, or defrauding his creditors. If they should find that such was the intention of the debtor, still it would not affect the mortgagee, unless such intention was known to him, or without notice or grounds for reasonable suspicion."

In the present case, only one witness was introduced by the plaintiff. This witness was J. R. Babbitt, the brother of the bankrupt, who conducted her business and acted for her when the notes and mortgage were given to Stults and when the stock of goods was sold and the notes and mortgage satisfied. He testified, in part, as follows: That the mortgage was not recorded because it was understood that it would damage his sister's credit. "Stults agreed to it. There was no discussion between us as to when it should be recorded. Stults did not agree that it should never be recorded." "Stults had the only mortgage." "Mr. Stults did not object to the mortgage going on record, but I did not want it recorded." "There was no intention on my part to defraud any of [the] creditors. In the payment of these debts it was not my purpose to hinder, delay, defraud, or defeat the rights of other creditors." The defendant was the only witness who testified in his behalf. He testified, in part, as follows: "Some time in the fall of 1899, I sold out my mercantile business in Bainbridge, Ga., to Miss I. T. Babbitt, and for the purchase-price I took notes of $100 each, and a mortgage on her house and lot in Bainbridge to secure the payment of the notes. Most of the notes were paid promptly; there was one past due when the stock of merchandise was sold to Mr. Cliett. I knew that Mr. Babbitt had been sick for some time prior to the sale of the Babbitt stock, but had no idea that the business was insolvent. I did not know who or what he owed,

and had no reason to believe that I. T. Babbitt, for whom Mr. J. R. Babbitt was agent, did not have sufficient property to pay her debts, nor did I have any information as to what was owing to or paid to local creditors.     I knew that Mr. Babbitt's sickness had prevented his giving his personal attention to his business, and I heard that Mr. Cliett would like to buy it, and told Mr. Babbitt about it, but did not suggest that he sell to Cliett. The mortgage on the house and lot which secured me was not recorded; I never agreed that it should not be recorded; I just failed to have it recorded. . . I knew after the stock of goods was sold to Cliett that Miss Babbitt had this house and lot and all her accounts left, and knew nothing to make me think that her other creditors would not be paid in full, if there were any." Stults was the only creditor who had a mortgage. There was no evidence that the debt of Bradley & Co., or the debt of any other creditor represented by the trustee, was created after the execution of the mortgage, nor did it appear that there were any claims superior to Stults's mortgage. There was evidence that the house and lot upon which the mortgage was given was worth $1,200. Stults was paid only $1,080 in satisfaction of his mortgage.

We think it apparent from the foregoing that the jury were authorized to find that, under the law of this State, Stults had a valid mortgage, not only against the mortgagor but against her unsecured creditors, who were represented by her trustee in bankruptcy. If the mortgage was valid and enforceable against the general creditors of the mortgagor, then it would have been recognized and enforced as a valid lien in a court of bankruptcy, if it had not been satisfied and the mortgagor had gone into such court to collect his debt. If he had a valid mortgage, then he was not of the same class as the general creditors represented by the trustee, and although his debt was paid in full, he did not obtain a greater percentage of it than any other creditor of the same class, for the reason that there were no other creditors of his class. There was evidence authorizing a finding that the payment to Stults was not made for the purpose of hindering, delaying, or defrauding the other creditors. The judgment refusing a new trial is affirmed.

*Judgment affirmed.    All the Justices concur.*