LOUISVILLE & NASHVILLE RAILROAD COMPANY *et al. v.*
MAXEY *et al.*

ATKINSON, J. By section 10 of the act incorporating the Georgia Railroad Company, approved December 21st, 1833 (Acts 1833, p. 256), it was provided: "That the said Georgia Railroad Company shall have power and capacity to purchase, and have and hold, in fee simple, or for years, to them and their successors, any lands, tenements, or hereditaments that they may find necessary for the site on and along which to locate, run, and establish the aforesaid road and railroads, or any branches thereof; or to vary or alter the plan or plans, and of such breadth and dimensions through the whole course of the road and roads, as they may see fit; and also, in like manner, to purchase any lands contiguous, or in the vicinity of the railroad and railroads, hereby authorized, that they may find necessary for the procuring and, from time to time, readily obtaining all necessary or proper materials, of what kind soever, for the constructing, repairing, and adequately guarding and sustaining the said railroad or railroads, and in like manner to purchase all rights of way on land, and all necessary privileges in waters or watercourses, that may lie on or across the route, which the said railroad or railroads may pass; and also all lands contiguous thereto, that may be found necessary for the erecting of tollhouses, storehouses, workshops, barns, stables, residences, and accommodations for servants or agents or mechanics, and for the stationing and sustaining all animals of labour." Section 11 of the same act contained a provision in regard to condemnation proceedings under the exercise of eminent domain, which also provided: "And the lands or right of way, so valued by the commissioners, shall vest in the said company,

in fee simple, so soon as the valuation thereof may be paid, or, when refused, may be tendered." On May 6th, 1836, the corporation received a deed executed by Jesse Maxey, which, after reciting certain formal parts, proceeded as follows: "That the said Jesse Maxey for and in consideration of running their contemplated railroad on and along his land, as well as in consideration of the sum of $5.00 to him in hand paid at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, hath given, granted, bargained and sold, and doth by these presents give, grant, bargain and sell, unto the said Georgia Railroad and Banking Company, their successors and assigns, the right of way over which to pass at all times by their directors, agents, officers, servants, and hirelings, in any manner they may think proper, and particularly for the purpose of *running, erecting, and establishing thereon a railroad,* with double tracks and turnouts, as may at all times be in the discretion of the said company, *pursuant to a charter of incorporation* granted to said company, granted the 21st day of December, 1833, and amended by the last General Assembly conferring banking powers and privileges; and to this end the limits of said right of way shall extend in width one hundred feet on each side from center of the proposed roadway of the contemplated railroad when completed, and to extend in length [through a described tract of land], and running such direction through said tract of land as said Georgia Railroad and Banking Company by their agents, managers, or workmen shall think best suited for the purpose of locating and establishing their said works; and connected with said right of way, the said company shall have the right to cut down and remove all such timbers on each side of said road as would, by falling on or shading the same, injure the rails or other parts of said road. Provided that nothing herein contained shall be so construed as to give said company the right to claim any of the timber so removed, nor more of the soil of the above one hundred feet on each side of the said road than may be thought necessary by said company or their agents for all the necessary works of said road, and the free and uninterrupted traveling thereon; together with all and singular the rights, members, and appurtenances to the strip, tract, or parcel of land being, belonging, or in any wise appertaining. To have and to hold the same unto the said Georgia Railroad and Banking Company, their successors and assigns, to their own proper use, benefit, and behoof, forever in fee simple, upon condition, and it is expressly understood, that should the said road contemplated as aforesaid be not run, located, and established on and along said strip or parcel of land described in the above and foregoing indenture, then said indenture is to be wholly null and void and of no effect. And the said bargained premises the said Jesse M. Maxey for himself, his heirs and assigns, unto the said Georgia Railroad and Banking Company, their successors and assigns, will warrant and defend the title thereof against the claims of all persons whomsoever, by virtue of these presents." *Held:*

1. Giving effect to the intention of the parties as reflected by the instrument as a whole, this deed should be construed as the grant of an easement or right to use the strip of land therein described, for the purpose of constructing and operating thereon a railroad, rather than

as a conveyance of the land. *Gaston* v. *Gainesville R. Co.* 120 *Ga.* 516 (48 S. E. 188); East Alabama R. Co. *v.* Doe ex dem. Visscher, 114 U. S. 340 (5 Sup. Ct. 869, 29 L. ed. 136).

(*a*) Incident to the right to maintain the railroad, it has also the right "at all times" while the railroad is located thereon to erect and maintain such warehouses and other structures as would facilitate the business of the railroad company and be accessorial to the receipt and delivery of freight. 2 Elliott on Railroads (2d ed.), § 946b.

(*b*) The railroad company could maintain such depots or warehouses or other structures directly; and where the conduct of the railroad business would be facilitated by the adoption of such plans, the company could license patrons of the road to erect and maintain warehouses or other structures on the right of way for their individual use, even to the extent of keeping goods, wares, merchandise and the like on storage in such warehouses until sold to their customers or used by them. Gurney *v.* Minneapolis Union Elevator Co., 63 Minn. 70 (65 N. W. 136, 30 L. R. A. 534); Grand Trunk R. Co. *v.* Richardson, 91 U. S. 454 (23 L. ed. 356); Michigan Central R. Co. *v.* Bullard, 120 Mich. 416 (79 N. W. 635); Roby *v.* Railroad Co., 142 N. Y. 176 (36 N. E. 1053).

2. The petition set forth the deed and declared on it as creating merely an easement, and alleged that the warehouses were constructed and maintained as private enterprises, and were "used by private individuals for their own convenience and profit alone," and was not subject to general demurrer

3. The charge did not conform in all respects to the principles announced in the first note.

4. The evidence all tended to show that each of the warehouses described in the petition, and the cutting of trees alleged to be done preparatory to the building of another warehouse, were matters within the easement granted; and therefore the verdict for the plaintiffs was unauthorized.　　　*Judgment reversed. All the Justices concur.*

FEBRUARY 27, 1913.

Action for damages. Before Judge Meadow. Oglethorpe superior court. December 12, 1911.

*Joseph B. & Bryan Cumming* and *Hamilton McWhorter Jr.,* for plaintiffs in error. *Samuel H. Sibley,* contra.