## 4770. DURDEN *et al. v.* AYCOCK BROTHERS. ·

1. The lien of a mortgage on a crop, given to secure payment of a debt for ·money, supplies, or other articles of necessity furnished to aid in making and gathering the crop, is superior to the lien of a previously recorded mortgage not given to secure the payment of a debt created to aid in making and gathering the particular crop.

2. The purpose of the act of 1899 (Acts of 1899, p. 78) was to give such preference to the mortgage creditor who furnished money or supplies to aid in making a crop as would enable insolvents, who might not otherwise be able to obtain credit, to pursue their ordinary vocation of farming, instead of being forced to become vagrants and perhaps criminals. And since the legislative intention would be defeated if, merely because of priority of record, a contract lien were held to be superior to a lien of a judgment, which arises by operation of law, the word "judgment," as used in section 3349 of the Civil Code, so far as applicable to proceedings .by rule brought to distribute funds in custodia legis, includes any final process under which the property (the proceeds of the sale of which are subject to distribution) was brought to sale or could have been legally sold.

DECIDED AUGUST 16, 1913. REHEARING DENIED SEPTEMBER 16, 1913.

Money-rule; from city court of Monroe—Judge Stone. February 27, 1913.

°*Joseph H. Felker,* for plaintiffs in error. *Walker & Roberts,* contra.

RUSSELL, J. The single question presented by this record is whether the lien of a mortgage on a crop, given to secure payment for advances furnished to aid in. making and gathering the crop in the year in which the mortgage was given, is inferior to the lien of a mortgage given to another creditor to secure the payment of the debt of a former year, merely because it was not recorded until after the mortgage given to secure the older indebtedness was recorded in the office of the clerk of the superior court.

Generally, as among themselves, the priority of mortgage liens is fixed by the date of the record, in the absence of the elements of notice (Civil Code, §§ 3259, 3260) ; and in the present case the decision of the trial judge seems to rest upon the fact that the mortgage in favor of the defendant in error was recorded at a time prior to the record of the mortgage of the plaintiff in error. The following undisputed facts appear from the record : One Adcock was indebted to the firm of Aycock Brothers for guano and other articles, which indebtedness was represented by two notes, one due · October 1, 1911, and the other due October 1, 1912; both of them

representing indebtedness for the year 1911. On May 18, 1912, Adcock mortgaged his crop of cotton to J. G. & G. W. Durden to secure payment for $200 worth of supplies, to aid (as stated in the mortgage itself) in making his crop of that year. On the same day he executed to Aycock Brothers, as security for the payment of pre-existing indebtedness to them, a mortgage upon 3,000 pounds of his first lint cotton, to be grown upon the same place. The Aycock mortgage was recorded on the day of its execution; the Durden mortgage was not recorded until May 22, 1912. On October 15, 1912, Aycock Brothers foreclosed their mortgage; and before the sale of Adcock's cotton, the Durdens placed their mortgage in the hands of the levying officer. Aycock brought a rule against the officer, and the question of priority of lien was submitted for adjudication to the judge of the city court of Monroe. There was testimony that one of the firm of Aycock Brothers had notice of the Durden mortgage when the Aycock mortgage was executed, but this evidence seems not to have been considered by the court; and it is immaterial, in the view that we take of the case here. Regardless of the question of notice, it is admitted that Aycock's mortgage was first recorded, but that Durden's mortgage was given to secure payment for supplies which were used to aid in making the crop of 1912, while Aycock's mortgage secured debts of the year 1911, and did not secure a debt to aid in making the crop of 1912. The trial judge directed that the funds in court, after the payment of the costs, be applied upon the mortgage fi. fa. of Aycock Brothers; no doubt, as we have said above, determining the issue by the priority of the record.

We think the court erred in this ruling. We have not been able to find any case in which the exact point has been decided by the Supreme Court, but we think that the rulings in *Franklin* v. *Callaway*, 120 *Ga.* 382 (47 S. E. 970), and *Akin* v. *Comer*, 138 *Ga.* 733 (75 S. E. 1121), clearly indicate the importance of construing section 3349 of the Civil Code in accordance with the legislative purpose which was manifest in its passage. The section as taken from the act of 1899 (Acts of 1899, p. 78) provides that "The lien of mortgages on crops, which mortgages are given to secure the payment of debts for money, supplies, and other articles of necessity, including live stock, to aid in making and gathering such crops, shall be superior to judgments of older date than such mortgages."

As was pointed out by Mr. Justice Lamar, in *Franklin* v. *Callaway,* supra, it is apparent that the status of this enactment is somewhat anomalous. The legislature was dealing with a condition in which persons holding older fi. fas. had liens on everything owned or which might subsequently be acquired by one who might wish to engage in farming. According to section 2787 of the Code of 1895 (Code of 1910, § 3329), the liens established therein stood in the following order: "1. Liens in favor of the State, counties, and municipal corporations, for taxes. 2. Liens in favor of creditors by judgment and decree. 3. Liens in favor of laborers. 4. Liens in favor of landlords. 5. Liens in favor of mortgagees. 6. Liens in favor of landlords furnishing necessaries;" etc. At the time of the passage of the act of 1899 the lien of a judgment creditor was superior to the lien of a mortgage subsequently acquired; and while, anterior to the passage of that act, priority of lien as among the mortgagees was established by the date of the record of their respective mortgages, it can not be supposed that the General Assembly, while singling out that particular class of mortgages which secured payment for supplies necessary to make crops, and making the lien of such a mortgage superior to the lien established by a judgment or decree, intended that a mere contract lien, created to secure an indebtedness not of that class which it was seeking to prefer, should be entitled to priority over judgments. And yet to rule that because of priority of record, a mortgage given to secure the debt of a previous year has priority of lien over a crop mortgage given to secure payment for supplies furnished in the year in which the crop was made, and which were furnished for the specific purpose of enabling that particular crop to be made, would in many cases have precisely that effect. If priority of lien is to depend solely upon the date of the record of the respective mortgages, the Aycock mortgage fi. fa. would take the fund in the hands of the constable (or sheriff, as the case may be), to the exclusion of the Durden supply-mortgage fi. fa.; but any judgment creditor of Adcock, by placing his fi. fa. in the hands of the officer, could, by rule, take the fund away from Aycock; and thus the provisions of section 3349 would be absolutely nullified, because the fund at last would have been applied to a judgment of older date than the Durden fi. fa.; the judgment creditor could not take the fund directly from the Durden mortgage, but, through the interme-

diation of the Aycock fi. fa., he could indirectly subvert the superiority of the Durden lien into inferiority. Or would the court have to hold in such a case that although the lien of the Aycock mortgage was superior to the mortgage for supplies in favor of the Durdens because the Aycock mortgage was first recorded, yet, inasmuch as the lien of the judgment creditor who had intervened was superior to that of the Aycock mortgage, and the Aycocks could not hold the fund to be applied on their mortgage fi. fa., the fund should, by reason of his intervention, be applied upon the Durden mortgage because the lien of the Aycock mortgage was inferior to the lien of the judgment?

It is very plain, from the rulings in the *Franklin* and *Akin* cases, supra, that the recording of the mortgages provided for in section 3349 of the Civil Code is a matter of very little importance; it is adjudicated in those cases that it is a matter of no consequence whatever where a mortgage given for supplies to aid in making a crop comes in conflict with an older fi. fa. In the *Franklin* case Justice Lamar says that "whether the paper was recorded on the day it was executed, or months afterwards, would make no difference;" and in the *Akin* case the mortgage for supplies was not recorded until after the fi. fa. had actually been levied. When a mortgage given to aid in making a crop comes in conflict with a mortgage given to secure a debt made for a different purpose, the matter of record can not be of any more importance than when the contest is between the mortgage given for supplies and the fi. fa., on a common-law judgment, unless it was the intention of the General Assembly to give to mortgages executed to secure debts of every kind a priority over older judgments.

The use of the word "date" in section 3349 of the Civil Code is not without some significance. A lien can only find full fruition in final process. The Aycock mortgage could not have brought the crop here involved to sale without being foreclosed, or without a mortgage fi. fa., and the mortgage fi. fa. is final process (in a sense a judgment), unless its progress be arrested by some proceeding appropriate for the purpose of transforming it into mesne process. As no creditor or claimant interposed any objection to the proceeding to enforce the collection of the mortgage, and the fund in court was raised by the sale under the mortgage fi. fa., the affidavit to foreclose the mortgage, followed by execution, can well be treated

as a judgment, and, as such, was inferior to the lien inherently present in the mortgage given for supplies, whether the latter had ever been recorded or not. Under the act of 1899 it took priority of an older judgment having a lien on the same crop, whenever it became a perfect crop mortgage for supplies. *Franklin* v. *Callaway,* supra. See, also, *Thompson-Hiles Co.* v. *Dodds,* 95 *Ga.* 754 (22 S. E., 673); *Dickenson* v. *Stults,* 120 *Ga.* 635 (48 S. E. 173). As was pointed out by Chief Justice Simmons in *Thompson-Hiles Co.* v. *Dodds,* supra, "before the adoption of the act of 1889, the effect of failure to record a mortgage within the time prescribed by law was to postpone it 'to all other liens 'created or obtained . . before the actual record of the mortgage;'" and that act was not intended to place creditors on any better footing in this respect than that occupied by them before.

It is manifest that the legislature intended by the passage of the act of 1899 to open a door of hope to persons engaged in the occupation of farming who might have become so heavily involved as to be unable to make a crop without assistance, and who could not obtain any assistance, because they had no means of securing supplies necessary to aid them in making a crop. A failure to make a crop the preceding year, or the loss of a crop, though either might be due to providential cause, might place a poor tenant or cropper in a position in which he would not be able to secure the payment of any advances made to him, by pledge or lien upon property in his possession or control. Furthermore, he might be so greatly involved in debt that even if he made a crop, this crop would be subjected to the superior lien of creditors who had obtained or who might obtain judgments against him; and thus he would be totally unable to comply with any obligations he might make in the spring in furtherance of his farming operations. The legislature very wisely saw that it was possible, under these conditions, for a large class of our people to be left helpless and hopeless, with the strong probability that in numbers of these cases such persons would become vagrants and then criminals. And such a condition of affairs would tend necessarily to diminish the products of agriculture and to cripple the pursuit of this, our leading occupation. A prudent man would not be willing to make advances with but small prospect of being paid for the supplies which he advanced, and when there was every probability that the crop, which could

not have been produced without his intervention and assistance, would be diverted, from payment for the very supplies without which no crop would have been made, to the payment of creditors who had in no way aided in the creation of the crop, however just their older demands. The purpose of the act of 1899 was to give insolvent farmers another chance, and it could only be done by giving to those who might wish to furnish farmers with the supplies without which the crop could not be made such security as would encourage the advancing of the necessary assistance in the way of supplies. The debt due for these supplies is declared, in the *Franklin* case, to be in the nature of purchase-money; and, considering the broad and beneficent purpose of the act, we conclude that it was the intention of the legislature to put the lien of a mortgage, taken for the purpose of securing payment for such supplies, in a class by itself, apart from mortgages given to secure ordinary debts. This being true, the date of the record of the crop mortgage for supplies is immaterial, except in a contest as to priority in a case where there is a contest between two or more crop mortgages for supplies furnished in the year in which the crop was made. Even as to a crop mortgage for supplies for a different year from that in which the crop in question was made, it can not be said that the supplies furnished were necessary in making that crop; nor can it be said that for that reason the debt due for such supplies is in the nature of purchase-money, when the supplies were used for producing another and a different crop.

It is our opinion, therefore, that under the undisputed facts of the record, the funds in the hands of the officer of the court should be paid upon the debt for the supplies which aided in producing the crop from which that fund was realized, and should be directed to be applied to the mortgage fi. fa. of the Durdens.

*Judgment reversed.*