## ATLANTA, BIRMINGHAM AND ATLANTIC RAILWAY COMPANY *v.* COUNTY OF COFFEE.

Under the pleadings and the evidence the judge did not err in refusing to grant an interlocutory injunction.

No. 2541. DECEMBER 16, 1921.

Petition for injunction. Before Judge Summerall. Coffee superior court. February 24, 1921.

*Brandon & Hynds* and *F. Willis Dart,* for plaintiff.

*H. J. Quincey* and *E. L. Grantham,* for defendant.

GEORGE, J. The Atlanta, Birmingham and Atlantic Railway Company filed its petition against the County of Coffee, to enjoin the county from constructing and putting in use a public highway over and along a certain strip of land or right of way in the town of Nicholls, Coffee County, title to which is claimed by the plaintiff. It is alleged, that the plaintiff is the absolute owner of the said strip of land or right of way; that it is in the possession thereof; that a part of the land was then being used by the plaintiff for certain of its industrial and spur-tracks, and that it contemplated an extension of its track over the remaining portion of said right of way in said land. It was further alleged that the defendant had, without lawful authority and over the objection of the plaintiff, entered upon said right of way and was then proceeding to build and construct a highway longitudinally along and over said strip of land; and that such use of the right of way by the county was inconsistent with its use and enjoyment by the plaintiff as a railroad company. In its answer to the petition the county denied that plaintiff was the owner of the absolute fee-simple title to the strip of land in controversy, and averred that plaintiff was not in possession of said strip. It further averred, that in the year 1906 the plaintiff ceased to use the strip of land for railroad purposes; that in the year 1908 the plaintiff removed its track from the land and entirely abandoned the same; that since the year 1908 the plaintiff had exercised no claim of ownership to the land; and that by reason of such an abandonment title to the strip of land reverted to the adjoining landowners. In its answer the defendant contended also that the highway had been practically completed and was in actual use; and that the plaintiff by reason of its laches was not entitled to the injunction

prayed. On the interlocutory hearing the court refused to grant an injunction, and the plaintiff excepted.

Where, under the power of eminent domain, condemnation proceedings are had by a railroad company, the company, upon payment of the award, becomes vested with such interest in the property taken as may be necessary to enable it to exercise its franchise. By express statutory provision, " whenever the corporation or person shall cease using the property taken for the purpose of conducting their business, said property shall revert to the person from whom taken, his heirs or assigns." Civil Code (1910), § 5233. By an act of the General Assembly (Acts 1914, p. 61) this section of the code was amended by providing that " whenever any municipality in this State condemns land for protection against floods and freshets, said municipality may require a fee-simple title to the property condemned on payment of the condemnation-money." A railroad corporation may, by contract, procure land, easements, rights of way, or other interests or property useful, needful and necessary for public purposes, and authorized by law to be taken or damaged. Civil Code (1910), § 5207. Where land is given or granted by an owner to a railroad corporation, the rights of the parties with respect to a reversion on abandonment will be determined by the terms of the conveyance. *City of Atlanta* v. *Jones, 135 Ga.* 376 (69 S. E. 571). In the instant case the plaintiff in error claims under a deed from Mark Hall to the Southern Pine Company of Georgia, dated December 30, 1899, conveying the following property: " One hundred feet in width of right of way, that is to say, fifty (50) feet on each side of the center of the road-bed of the present Offerman & Western Railroad, as now located, through that portion of lot of land number five hundred and fourteen (514) in the sixth district of Coffee County, Georgia, now owned by said party of the first part; said one hundred feet in width of right of way being more fully described by a sketch or plat of same hereto attached and made a part of this deed, and referred to for further identification of the railroad right of way hereby conveyed. . . To have and to hold the said bargained and described right of way unto the said party of the second part, its successors and assigns, forever in fee simple," with covenant of general warranty. It is conceded by the defendant in error that if the deed from Hall to the Southern

Pine Company conveyed an absolute fee-simple title to the land in controversy, the plaintiff in the court below was entitled to an injunction. It is argued with force that the grant of a right of way is in fact a grant of the fee; that the phrase " right of way " as here used is intended to describe the land granted — that is, these words are words of description rather than of tenure. It will be conceded that the phrase " right of way " does not necessarily mean the right of passage merely. The words have a two-fold significance. They are sometimes used to mean the mere intangible privilege of crossing, and sometimes used to indicate that strip of land which the railroad company appropriates for its use and upon which it builds its roadbed or track. New Mexico *v.* U. S. Trust Co., 172 U. S. 171, 182 (19 Sup. Ct. 128, 43 L. ed. 407). Conceding that the phrase, " right of way," has a twofold significance, the term as used in the deed from Hall to the Southern Pine Company, and under and through whom the plaintiff in error claims in the instant case, can not be construed as a descriptive term only. The twofold significance of the words must be regarded. Giving effect to the intention of the parties as gathered from the whole instrument, we are of the opinion that the deed in question did not vest in the Southern Pine Company and its successors an absolute fee-simple title to the strip of land in controversy, but an easement merely — not the easement spoken of in the old law books, but an easement peculiar to a railroad, as pointed out in Western Union Telegraph Co. *v.* Pennsylvania Railroad Co., 195 U. S. 540 (25 Sup. Ct. 133, 49 L. ed. 312, 1 Ann. Cas. 517). See Abercombie *v.* Simmons, 71 Kan. 538 (81 Pac. 208, 1 L. R. A. (N. S.) 806, 114 Am. St. R. 509, 6 Ann. Cas. 239).

In this view of the matter it is unnecessary to hold that the " words ' right of way ' in the grant describe the tenure, not the land granted," as was held in Atlantic & Pacific Railroad *v.* Lesueur, 2 Ariz. 428 (19 Pac. 157, 1 L. R. A. 244). The words in the tenendum clause under consideration, " forever, in fee simple," do not demand the construction contended for by plaintiff in error. It is to be noted that even in this clause of the deed the property conveyed is described as " right of way." The words " fee simple " are descriptive of the extent of duration of the enjoyment of the easement. See *Ga. & Fla. Ry. Co.* v. *Swain,* 145

*Ga.* 817 (90 S. E. 44); *Louisville & Nashville R. Co.* v. *Maxey,* 139 *Ga.* 541 (77 S. E. 801); *Gaston* v. *Gainesville &c. R. Co.,* 120 *Ga.* 516 (48 S. E. 188). It is conceded that in the Georgia cases cited above the instruments under construction contained conditions and limitations, and that these cases are not controlling. In principle, however, the cases are in point. Our statutes recognize that land for a right of way may be acquired by purchase as well as by compulsory proceedings. " But where there is an implied restriction, as is often the case in regard to the right of way, or the like, of a railroad company, the grant does not ordinarily vest a fee in the company, but vests such an estate — an easement—as is requisite to effect the purposes for which the property is acquired." 2 Elliott on Railroads, § 400. The fact that the right acquired is designated as a fee, or that the deed contains a covenant of warranty, is not necessarily controlling. Jones *v.* Van Bochove, 103 Mich. 98 (61 N. W. 342). See also Cincinnati &c. R. Co. *v.* Geisel, 119 Ind. 77 (21 N. E. 470). In the construction of deeds as well as wills, the modern tendency is to give effect to the intention of the parties. " In ascertaining the intention of the parties the recitals contained in the deed, the contract, the subject-matter, the object, purpose, and the nature of the restrictions or limitations, and the attendant facts and circumstances of the parties at the time of the making of the deed, are to be given consideration." *Mayor &c. of Savannah* v. *Barnes,* 148 *Ga.* 317, 319, 321 (96 S. E. 625, 3 A. L. R. 419). In Hill *v.* Western Vt. Ry. Co., 32 Vt. 74, it is said that " a contract to convey land for a particular use, or to a party having capacity to acquire a certain estate in land for a particular use, must, of necessity, carry the implication of such limitation upon the estate to be conveyed." We think it clear therefore that when Hall conveyed to the Southern Pine Company " one hundred feet in width of right of way, . . said one hundred feet in width of right of way being more fully described by a sketch or plat, . . · and referred to for further identification of the railroad right of way hereby conveyed," he did not intend to vest in that company an absolute fee-simple title to the strip of land in controversy.

Was the judge authorized to find that the easement had been lost by abandonment or by nonuser? In *Mayor &c. of Savannah* v. *Barnes,* supra, it was held that " Where an easement has been

acquired by grant, a mere nonuser without further evidence of an intent to abandon it will not constitute abandonment." In the opinion it was said: "It is, however, true that an easement acquired by grant, as in this case, can not be lost by a mere nonuser without further evidence of an intention to abandon. . . Where an easement is acquired by mere user, the doctrine of extinction by mere nonuser may in reason apply; but where an easement is acquired by grant, the doctrine of extinction by nonuser should not apply." We are prepared to assent to the proposition, that, to constitute abandonment of an easement acquired by grant, acts must be shown of such an unequivocal nature as to indicate a clear intention to abandon, and that mere nonuser will not amount to abandonment, as contended by plaintiff in error. The rule is supported by many decisions. In the instant case there was evidence tending to show not only that the plaintiff in error had ceased to use the strip of land in controversy for railroad purposes, had removed its track from that portion of the strip over and along which the county had constructed the public highway, and that others had entered into the possession thereof, but that in 1906 Kirkland and others had sought as plaintiffs in an equitable suit to enjoin the plaintiff in error or its predecessor in title from tearing up and abandoning the section of its line of road located upon the particular right of way in controversy. In November, 1906, and after this court had affirmed the judgment of the lower court refusing to grant an interlocutory injunction (*Kirkland* v. *A. B. & A. Ry. Co.*, 126 *Ga.* 246, 55 S. E. 23), the plaintiff in error or its predecessor in title amended its answer in the cause, expressly averring that it had "abandoned the operation of its trains over the line of road from Guysie to Nicholls [the right of way in controversy] as originally constructed, . . and is now operating its trains over the line as constructed and completed from Guysie via Sessoms to Nicholls." The necessary inference is that the issue in that case was finally determined in favor of the plaintiff in error in this case, because the uncontroverted evidence discloses that the track was thereafter removed from the land in question, and that said right of way has not since been used or occupied by the railroad company. It is true that a part of the strip was never abandoned, but was at the time of the filing of the petition in the present case used by the plaintiff for

certain of its industrial and spur-tracks. The judge was author-
ized to find, however, that the county had not constructed the
public highway over or upon any part of the strip so used by the
plaintiff in error. In these circumstances the judge did not abuse
his discretion in denying the interlocutory injunction.

      *Judgment affirmed. All the Justices concur.*