## JACKSON *et al.* v. CRUTCHFIELD *et al.*

No. 11785. MAY 15, 1937.

*Joseph G. Faust,* for plaintiffs in error.

*E. Lloyd Lewis,* contra.

RUSSELL, Chief Justice. Edwin and Clifford Crutchfield filed suit against W. R. Jackson and L. S. Taylor, in which they alleged that they were the owners of certain described lands; that in 1888 their predecessor in title conveyed to the Union Point and White Plains Railroad Company the right to use a portion thereof for railroad purposes; that in 1927 said company discontinued the use of the railroad and sold its rights to Jackson; that during the time the company operated the railroad it built several section-houses along the tracks, four of which are on the lands of the

plaintiffs; that Jackson has never operated the railroad since it has been in his possession; that he has abandoned his use thereof, has recently sold the rails and cross-ties, and has taken them up from the road-bed, and the road-bed is now growing up in trees; that Jackson has thus abandoned his right of way and has forfeited his rights under said easement; that for the last seven or eight years said houses have been vacant at times and rented at other times; that they are now rented, and Jackson is receiving the rent therefrom; that said houses are not now and have not been for several years past used for any purpose connected with railroading; that Jackson has bargained to sell these houses to Taylor, and Taylor is preparing to tear them down and remove them from the land; that the defendants, "although not refusing to deliver the land to said plaintiffs, have refused to deliver the possession of said houses or to pay them the profits thereof, and are preparing to dispose of the said houses;" and that plaintiffs have bargained to sell both the lands referred to and the houses thereon to Floyd Corry. They prayed that whatever rights the railroad company may have had in the land and houses under the easement granted in 1888 be declared forfeited; that title be decreed in plaintiffs; that defendants be enjoined from removing or tearing down said houses pending determination of this suit; and that plaintiffs have judgment for $50 for rents paid to Jackson. The defendants answered, denying that the railroad had ever been abandoned, except that the operation of trains thereon had been discontinued; and alleging that Jackson has been making efforts to operate the railroad and run trains; that Jackson has a perfect right to sell said houses; that Jackson has never abandoned the railroad; that while the rails are being removed, it is because they are too light for freight hauling, and the price of scrap rails is high; that Jackson is the owner of a quarry "which would furnish an inexhaustible supply of granite" for a railroad haul, and he has been seeking to develop the same in conjunction with the railroad and use of the railroad-bed; that the houses in question are trade-fixtures in contemplation of law, which may be removed by the owner of the same from the premises and sold by him to Taylor, if it is so desired; that plaintiffs have no right to sell to Corry; and that, other than an interest in the purchase of the houses, Taylor has no interest in this suit. But Jackson

avers further that there has been no abandonment of the railroad or forfeiture of the land or the houses thereon; and that, even if he were to abandon the same, he claims under a deed prior to the plaintiffs, which conveyed to him the houses and the land. By amendment defendants set up that Jackson, under deed from the receiver of the railroad on May 17, 1928, which was recorded, received the fee-simple title to all the property referred to therein, including the land and houses referred to in the suit; and that he went into possession thereof under such deed and has remained in the "open, adverse, notorious, continuous, peaceable, and uninterrupted possession thereof for more than seven years, and thereby obtained and now holds good and legal title thereto, and prays that the court so decree."

On the trial the plaintiffs introduced evidence tending to support the allegations of their petition. It appeared that the plaintiffs were the sole heirs at law of Mrs. Effie Crutchfield; that no debts were owing by her at the time of her death; that there was no administration of her estate; that she received a warranty deed from W. W. Stevens as executor of William Stevens, dated April 25, 1891, conveying the land including that involved in this case; that on October 18, 1888, William Stevens, in consideration of the railroad company running "their contemplated railroad-tracks on and along his land," bargained, sold, and conveyed to said company, "their successors and assigns, the right of way over which to pass at all times by themselves, directors, officers, agents and hirelings, in any manner they may think proper, and particularly for the purpose of running, erecting, and establishing thereon a railroad with double track," etc., "as may at all times be within the discretion of said company pursuant to a charter of incorporation granted said company." It was provided in said instrument that the grantor reserved the right to cultivate the land not necessary for the use of the railroad company "in its full and free right of way;" and that the company had the right to "cut down and remove all timber and other growth on each side of the road as would would be falling on or shading the same." It was stipulated between counsel that plaintiffs had title to all of the lands of the grantor Stevens, except that part conveyed to the railroad by the above instrument for a right of way. The evidence showed that the railroad company

had been taken over by a receiver, had ceased to operate its railroad and trains about nine years previously; and that in 1928 the receiver under order of court conveyed all the railroad property to Jackson. The court directed a verdict for a permanent injunction as prayed by the plaintiffs. Decree was entered accordingly. It was decreed that the rights of the railroad were forfeited, and the rights of the defendants to the land and houses referred to in the petition be declared forfeited and title to be in the plaintiffs; that possession be delivered to the plaintiffs, and that the defendants be permanently enjoined from tearing down or molesting said houses. The defendants moved for a new trial on the general grounds only. The judge overruled the motion, and the defendants excepted.

1. Although there is a directed verdict in this case, and the judgment or decree awarding to the plaintiffs the other relief is based thereon, it is only necessary that this court consider whether there was sufficient evidence to support a finding in favor of the plaintiffs on the issues involved, there being no special assignment of error on the direction of the verdict, on the specific ground that there were issues of fact which should have been submitted to the jury, or otherwise, and that for such reason the trial court erred in directing the verdict. It has been repeatedly ruled by the appellate courts of this State that they will not decide whether the trial court erred in directing a verdict, where no specific assignment of error, either pendente lite, in the motion for a new trial, or in the bill of exceptions, is made upon such direction; and that the general grounds of a motion for new trial do not suffice. See *Dickenson* v. *Stults,* 120 *Ga.* 632 (48 S. E. 173); *Bosworth* v. *Nelson,* 172 *Ga.* 612 (158 S. E. 306), and cit.; *Beall* v. *Mineral Tone Co.,* 167 *Ga.* 667 (146 S. E. 473), and cit.; *Alley* v. *Candler,* 155 *Ga.* 739 (118 S. E. 354), and cit.; *Tyson* v. *Anderson,* 164 *Ga.* 673, 677 (139 S. E. 410); *Gilliard* v. *Johnston,* 161 *Ga.* 17 (129 S. E. 434); *Kerce* v. *Davis,* 165 *Ga.* 168 (140 S. E. 287); *Flanders* v. *Cook,* 167 *Ga.* 66 (144 S. E. 903). Therefore, if there is any evidence to support the verdict and judgment in this case, the judgment denying a new trial must be affirmed.

2. The deed to the railroad company, on which Jackson bases his claim, provides that the grantor therein, for and in consid-

eration of $5, and of the company running the railroad-tracks on and along his lands, has granted, sold, bargained, and conveyed to it, its "successors and assigns, the right of way over which to pass at all times by themselves, directors, officers, agents and hirelings, for the purpose of running, erecting, and establishing thereon" a railroad-track or tracks. It appears from the evidence that a Federal court receiver was appointed for the railroad company in December, 1927; that it ceased to operate; that the receiver was ordered by the Federal court to sell all the railroad property, and that he sold all its equipment and other property, without the franchise, to Jackson. It also appears that the railroad-tracks have been dismantled and the rails torn up; that the crossties have become rotten; that the road-bed and right of way have grown up in trees; that no trains have been operated over the tracks since December, 1927, and that it is not likely that any trains will ever be operated thereon. In these circumstances the jury were authorized to find that the property was deeded solely for a railroad right of way, and therefore conveyed to the company only an easement in said lands for that purpose, and that upon the abandonment of the railroad all and any rights of the railroad company, its successors and assigns, to said lands and the appurtenances thereof were forfeited and the property conveyed reverted to the plaintiffs as the sole heirs of Mrs. Effie Crutchfield, to whom the lands through which the railroad right of way ran were subsequently conveyed by the executor of the grantor to the railroad company. See *L. & N. R. Co.* v. *Maxey,* 139 *Ga.* 541 (77 S. E. 801), the deed involved in the case sub judice being apparently modeled after the deed under consideration in the *Maxey* case. Also see *Gaston* v. *Gainesville &c. R. Co.,* 120 *Ga.* 516 (48 S. E. 188); dissent in *L. & N. R. Co.* v. *Willbanks,* 133 *Ga.* 15, 18 (65 S. E. 86, 24 L. R. A. (N. S.) 374, 17 Ann. Cas. 860); *G. & F. Ry. Co.* v. *Swain,* 145 *Ga.* 817 (90 S. E. 44); *Mayor &c. of Savannah* v. *Barnes,* 148 *Ga.* 317 (96 S. E. 625, 9 A. L. R. 419); *A., B. & A. R. Co.* v. *Coffee County,* 152 *Ga.* 432 (110 S. E. 214); *Rogers* v. *Pitchford,* 181 *Ga.* 845 (184 S. E. 623). The deed from the grantor to the railroad company here under consideration is not like the deeds involved in *Johnson* v. *Valdosta &c. R. Co.,* 169 *Ga.* 559 (150 S. E. 845); *Wood* v. *Flanders,* 180 *Ga.* 835 (181 S. E. 83), and cit.

3. The conveyance from the receiver of the railroad company to Jackson, described the property purchased by Jackson, and thereby conveyed "all property of the Union Point & White Plains Railroad Company, including its right of way and land, bridges, trestles, and culvert, its railroad-tracks, consisting of 11.794 miles of main track and about 0.564 miles of yard and side-track, a total of 12.538 miles of all track, said track and right of way running from the main line of the Georgia Railroad & Banking Company to a point 1.67 miles from Union Point in Greene County, Georgia, and extending to White Plains in said county, together with all cross-ties, rails, . . section-houses . . equipment and material on hand, all located in Greene County, Georgia." Thus it only purported on its face to convey a right of way in a mere easement.

4. The section-houses erected by the railroad company on the premises to assist it in carrying on its railroad business could not be removed, after an abandonment of the railroad by the company and its insolvency, by a purchaser of all the railroad property, without the franchise, from the receiver having custody and control of the railroad property under a court order. *Carr* v. *Georgia R.,* 74 *Ga.* 73; *Wright* v. *DuBignon,* 114 *Ga.* 765, 770 (40 S. E. 747, 57 L. R. A. 669); Code, §§ 61-109, 85-105.

5. The evidence supported the verdict in favor of the plaintiffs, and there was no error in denying a new trial.

*Judgment affirmed. All the Justices concur.*