[Civil No. 224.   Filed September 19, 1888.]

[S. C. 19 Pac. 157.]

## ATLANTIC & PACIFIC RAILROAD COMPANY, Plaintiff and Appellant, v. J. T. LESUEUR, Defendant and Appellee.

1. RAILROADS—RIGHT OF WAY—14 U. S. ST. AT LARGE, 292—IMPROVEMENTS TAXABLE.—Where the character of a railroad company exempts the right of way within the territories of the United States, statute, *supra,* the exemption is limited by the letter of the law and does not extend to improvements thereon.

2. TAXATION—EXEMPTION STATUTES—CONSTRUCTION.—Exemption from taxation is an exception to the general rule that all property shall be taxed equally and is subject to the strictest construction.

3. RAILROADS—RIGHT OF WAY—EASEMENT—ABANDONMENT.—The grant of a right of way to a railroad is the grant of an easement and not of a fee. Upon abandonment of its line the right of way so abandoned would revert to the grantor.

4. SAME—TAXATION—FRANCHISES—FEDERAL AGENCY—POWER OF TERRITORY TO TAX—ART. 1, SEC. 8, CONST. U. S.; REV. ST. U. S. 1878, SECS. 1850, 1851; COMPILED LAWS ARIZONA 1877, SEC. 2005, CITED.—Under the powers delegated to Congress and the Territories by the constitution and statutes, *supra,* this territory has the right to tax franchises, whether they be Federal agencies or the means of interstate commerce.

5. SAME—SAME—ROLLING STOCK—SITUS.—Where a railroad uses rolling stock in a county such personal property is subject to taxation where used.

6. TELEGRAPH LINES—TAXATION.—Where telegraph lines are built by railroad on a right of way exempted by its grant they are nevertheless taxable.

DISMISSED WITH COSTS, ON MOTION OF APPELLANT.   140 U. S. 669, 35 L. ED. 593, 11 Sup. Ct. Rep. 1015.

APPEAL from a Judgment of the District Court of the Third Judicial District in and for the County of Yavapai. James H. Wright, Judge.   Affirmed.

The facts are stated in the opinion.

W. C. Hazledine, and Howard & Sanford, for Appellant.

Baldwin & Baldwin, for Respondent.

BARNES, J.—This was a suit to enjoin the collection of taxes levied upon the property of the plaintiff by the proper revenue officers of Apache county. The ground upon which the injunction is sought is that the assessment was illegal. The levy was made upon the improvements on a certain strip of land in said county, 200 feet wide and 112 miles long, upon the center line of which the railroad of plaintiff is situate; the improvements consisting of culverts, wooden bridges, grading, trestles, rock, earth cuts, and fills; also 265,-000 wooden cross-ties, steel and iron rails, fish-plates, bolts, and spikes thereon; also steam-pumps and water-tanks, section-houses, depot buildings, round-house, hotel, coal-chutes, side tracks, blacksmith shops thereon; also 12 cottages, used by employes, 500 feet from the track; the franchise of plaintiff to do business and collect freights and fares, except business with the United States; also a telegraph plant along the said line, also safes and office furniture; also railway supplies, also 15 locomotives, 4 coaches, 2 mail and express cars, 100 box cars, 75 flat cars, 7 caboose cars, 16 living cars, 15 hand cars, coal on hand, and cross-ties.

Against the legality of this assessment it is urged, first, that the superstructure and improvements, buildings, etc., on what is called the "right of way" of the plaintiff is exempted from taxation by its charter. By its charter, (14 U. S. St. at Large, 292,) "the right of way through the public lands is granted to plaintiff for the construction of a railroad and telegraph, to the extent of 100 feet on each side of said road, including necessary grounds for station buildings, shops, switches, turn-tables, and water stations; and the right of way shall be exempt from taxation within the territories of the United States." It is said that this is a grant of an interest in the real estate, taken for a right of way, and that whatever is attached to it becomes a part of the realty,

and, as the right of way is exempt, that the exemption carries, with it whatever has become a part of the realty. No one can question that a right of way is an interest in the realty; nor that culverts, bridges, railway switches, depot buildings, etc., thereon, become part of the realty. He who has title to the right of way has title to the superstructure. They would pass by grant, and would be subject to the laws regulating the conveyance of real estate, including the statute of frauds. All this will be conceded. But does it follow that the exemption of the right of way exempts all appurtenances afterwards attached thereto? This is the question. The supreme court of Montana seems to hold that it does, though a careful consideration of the decision will show that this conclusion is *dictum. Northern etc. R. R. Co.* v. *Carland,* 5 Mont. 146, 3 Pac. 141. The charter of the Northern Pacific Railroad Company is in the same words as the Atlantic & Pacific Railroad Company's charter. In that case the tax was levied upon an assessment of "twenty miles of railroad and rolling stock." The assessment of 20 miles of railroad did include the right of way, as the argument of that case and the cases cited demonstrate conclusively. And the court rightly held that the assessment was illegal, in that the exempted right of way was included in it. This was all that was before the court, and is all that was really decided. The cases cited do not lead beyond this conclusion. *Appeal of North Beach etc. R. R. Co.,* 32 Cal. 506. This case holds that a right of way is an easement in the land, and that the estate is real property, and may be taxed as such. The opinion is quoted at large in the Montana case. We have never seen the principle here stated doubted. Washb. Easem. 5, says: "An easement always implies an interest in the land. It may be a freehold or a chattel one, according to its duration. It is real property, and it is created by grant." In this it differs from a license. *Rowbotham* v. *Wilson,* 8 El. & Bl. 157; *Ex Parte Coburn,* 1 Cow. 570; *Heaton* v. *Ferris,* 1 Johns. 146; *Wolfe* v. *Frost,* 4 Sand. Ch. 86; *Foster* v. *Browning,* 4 R. I. 51, 67 Am. Dec. 505; *Buckeridge* v. *Ingram,* 2 Ves. Jr. 654; *Binney's Case,* 2 Bland. 145; *Bowman* v. *Wathen,* 2 McLean, 385, Fed. Cas. No. 1740; *Providence*

*Gas Co.* v. *Thurber,* 2 R. I. 21, 55 Am. Dec. 621; *Albany etc. R. R. Co.* v. *Osborn,* 12 Barb. 225; *Albany etc. R. R. Co.* v. *Canaan,* 16 Barb. 247; *Railroad Co.* v. *Morgan Co.,* 14 Ill. 166, 56 Am. Dec. 497; *Williams* v. *New York Cent. R. R. Co.,* 16 N. Y. 100; *Mahon* v. *New York Cent. R. R. Co.,* 24 N. Y. 658; *Wager* v. *Troy Union R. Co.,* 25 N. Y. 526; *Presbyterian Soc. in Waterloo* v. *Auburn etc. R. R. Co.,* 3 Hill, 569; *People* v. *Cassity,* 46 N. Y. 46; *New Haven* v. *Fair Haven etc. R. R. Co.,* 38 Conn. 422, 9 Am. Rep. 399; *Chicago* v. *Baer,* 41 Ill. 306; *Farmers' Loan & Trust Co.* v. *Hendrickson,* 25 Barb. 494; 1 Washb. Real Prop. 3. These, and many other authorities that may be cited, clearly point out the law as stated. An assessment of 20 miles of railroad was an assessment of the real estate, and included the right of way and the superstructure thereon. How we are to conclude from these premises, however, that the exemption of a right of way *ex vi termini* exempts from taxation the superstructure, we cannot see. It is *non sequitur.* Exemption from taxation is an exception from the general rule that all property shall be taxed equally. He who asserts that his property is exempt must show it by the clear letter of the law. No intendments are in his favor. No construction will aid him. Every doubt will be resolved against him. He does not stand favored, as does a grantee or a mortgagee. The meaning of words is not broadened to include him. Though you will construe liberally when you tax, you must construe strictly to exempt. You must point it out in the words, *"Ita lex scripta est;"* free from doubt or ambiguity. Cooley, Tax'n, 204; *Philadelphia etc. R. R. Co.* v. *Maryland,* 10 How. 376; *Providence Bank* v. *Billings,* 4 Pet. 514; *Railroad Co.* v. *Dennis,* 116 U. S. 665, 6 Sup. Ct. Rep. 625; *Cottle* v. *Spitzer,* 65 Cal. 459, 52 Am. Rep. 305, 4 Pac. 435; *Waller* v. *Hughes, ante,* p. 114, 11 Pac. 122. SHIELDS, J., for this court, says: "No property within the territory is exempt from the operation of these revenue laws, unless put beyond them, designedly and unequivocally, by the legislative or other sovereign power. A mere inference that certain property is exempt from taxation will never do; nor will it be assumed, unless the language used is too clear

to admit of doubt." *Railroad Co.* v. *Guffey,* 120 U. S. 569, 7 Sup. Ct. Rep. 693; "It is the settled doctrine of this court that an immunity from taxation by the state will not be recognized, unless granted in terms too plain to be mistaken." By this rule, then, we come to a construction of section 2 of the plaintiff's charter. The lands of plaintiff are not assessed; nor is the right of way as such. Improvements, culverts, bridges, ties, iron, buildings, etc., located on the right of way, are. But were these exempted by the exemption of the right of way? Had congress so intended, it would have been easy to have said so; the addition of a word or two would have made it certain. Congress granted a right of way over the public lands, and in the same section it exempts what is granted from taxation. It did not want improvements, culverts, bridges, buildings, iron, ties, etc. This was property to be placed there afterwards by the grantees. Shall we infer that it exempted what it did not grant, when it does not say so or use words looking in that direction? We think not. We should stand by the letter of the law, in favor of equality of taxation. We will not infer that congress has done so unjust a thing as to expose an immense property thereafter to be created where it would demand the constant protection of all the machinery of organized society at a great expense, and then relieve it of its just burden of taxation in order to defray these expenses. It was projected into almost a wilderness, where inhabitants were few; where the title to the lands was in the United States, free from taxation; where the burdens of sustaining social order would at best be heavy. Such a property as this would greatly increase these burdens. It cannot be thought for a moment that congress intended by the use of the innocent words, "and the right of way shall be exempt from taxation," to do such a monstrous wrong as to exempt the millions the grantees should put upon the right of way from taxation for all time.

It is further urged with great force, skill, and ability that the grant of right of way to a railway is *sui generis,* and is in fact a grant of the fee; and, if so, to exempt the fee so granted exempts the superstructure. It is said that the term "right

of way" is used to describe the land granted,—that is, that
these are words of description, rather than of tenure. We
cannot concur with this view, and no authority can be found
which so holds. We must conclude that the words are
used in their common, well-known, and universally accepted
legal meaning, and that it was a grant of an easement as de-
fined by the law. It was not a grant of the fee. Should the
company see fit to change its line and abandon its present
alignment at any point, the right of way so abandoned would
revert to the grantor.

Again, it is urged that the assessment of the franchise of this
company is the taxing of a federal agency, and hence it may
not be taxed; and in the case of *Steamship Co.* v. *Pennsyl-
vania,* 122 U. S. 326, 7 Sup. Ct. Rep. 1118, is cited. That
case and the authorities cited therein hold that the state may
not tax a federal agency created by act of congress, and also
that a state may not, by taxation, interfere with interstate
commerce. This is a power specially delegated by the consti-
tution. "Congress alone can deal with such transportation;
its non-acting being equivalent to a declaration that it shall
remain free from burdens imposed by state legislation."
BRADLEY J., in case *supra.  California* v. *Railroad Co.,* 127
U. S. 41, 8 Sup. Ct. Rep. 1073. In the case at bar congress
has acted. The act says this right of way shall be exempt
from taxation. *Inclusio unius, exclusio alterius.* Congress
excludes or exempts only the right of way; hence the inference
is that all else is not excluded or exempted. The constitution
declares that "congress shall have power to regulate com-
merce with the foreign nations and among the several states,"
etc. Article 1, § 8. This takes the power from the states, and
delegates it to Congress. Congress might, therefore, tax or
authorize the taxation of the franchises of interstate carriers.
But the act of the territory is the act of congress. Rev. St.
U. S. § 1851. "The legislative power of this territory extends
to all rightful subjects of legislation not inconsistent with
the constitution and laws of the United States. No tax shall
be imposed upon the property of the United States; nor shall
the lands or other property of non-residents be taxed higher

than the lands or property of residents." This is the only limitation placed upon the taxing power of the territory, and should be held to be a delegation by congress of its admitted power to the territories to tax all else. A franchise is property, has value, and it is not prohibited to tax it. To do so is not inconsistent with the constitution or laws of the United States. Section 1850, Rev. St. U. S., enacts that "all laws passed by the legislative assembly shall be submitted to congress, and if disapproved, shall be null and void." And may we not add, "otherwise shall have full force and effect?" February 12, 1875, the territory enacted (Comp. Laws, § 2005) that "all property of every kind and nature whatsoever within this territory shall be subject to taxation, except," and a franchise of a corporation is not in any of the exceptions. We must conclude, therefore, that congress has granted to the territory the right to tax franchises, whether they be federal agencies or the means of interstate commerce. Congress may withdraw this power whenever it sees fit, and may disapprove of this legislation. Until it does so, it must be enforced, as the law of the territory. Congress will carefully guard all of its agencies, and see to it that the territories do not impair their efficiency, and also will look well after the commerce among the states, that it be not obstructed, and will act when occasion requires. Until it does, it must be regarded as having approved of this legislation.

Again, it is contended that all of this rolling stock has its *situs* and domicile in Albuquerque, N. M., and was not subject to taxation within said county. It appears that the headquarters of the western division of plaintiff's railroad was at Albuquerque, N. M., and that it had over 1,000 cars and engines in constant use between Albuquerque, N. M., and Mojave, Cal., a distance of over 800 miles, moving passengers and freight. Plaintiff returned 15 locomotives, 16 office cars, and 7 caboose cars as constantly in Apache county; 181 cars were added by the assessor. This question is set at rest by the supreme court of the United States in *Marye* v. *Railroad Co.*, 127 U. S. 117, 8 Sup. Ct. Rep. 1037, (April 23, 1888) : "It is quite true, as the *situs* of the Baltimore & Ohio Company is in

the state of Maryland, that, also, upon general principles, is the *situs* of all its personal property; but for the purposes of taxation, as well as for other purposes, that *situs* may be fixed in whatever locality the same may be brought and used by its owner, by the law of the place where it is found." And such a tax might be properly assessed and collected in cases like the present, where the specific and individual items of property so used and employed were not continuously the same, but were constantly changing, according to the exigencies of the business. In such cases the tax might be fixed by an appraisement and valuation of the average amount of the property thus habitually used."

In the above case the *situs* was conceded to be in Maryland. That state granted its charter. In this case, it is by no means conceded that the place of the "head-quarters of the western division" is the *situs* of the company. The charter designates no place of general business. For the purposes of taxation, its *situs* must be whereever business is done, and its personal property engaged in that business shall be subject to the taxing laws of the place where it is so used. The above decision makes it unnecessary to review the long list of cases cited, as this, the last case, settles all conflict and resolves all doubt.

It is insisted, also, that the telegraph lines erected on the right of way are exempt, for the same reasons as depots, etc. We think not, for the reasons given heretofore. It is clear that section 3, c. 53, Comp. Laws Ariz., refers to telegraph lines constructed under the provisions of that act. The lines of this plaintiff are constructed by authority of the act of congress granting its charter. Under what circumstances a court of equity will entertain jurisdiction to enjoin the collection of a tax, see the case of *Campbell* v. *Bashford, ante,* p. 344, 16 Pac. 269, where the question is discussed by this court. We see no error in this record, and the judgment of the district court is affirmed.

Wright, C. J., and Porter, J., concur.