JONES v. OKLAHOMA CITY et al.

No. 28928. Oct. 5, 1943.

As Corrected on Denial of Rehearing Feb. 21, 1944.

*145 P. 2d 971.*

638

W. K. Garnett and Chas. H. Garnett, both of Oklahoma City, for plaintiff in error.

J. H. Everest, Robert K. Everest, and E. E. Gibbens, all of Oklahoma City, for defendant in error Nora E. Wallace.

J. H. Jarman, of Oklahoma City, for defendant in error W. R. Ramsey.

A. L. Jeffrey, Municipal Counselor, Warren W. Connor, Asst. Municipal Counselor, and W. H. Brown, Special Municipal Counselor, all of Oklahoma City, for defendant in error City of Oklahoma City.

HURST, J. This is a condemnation proceeding, instituted by plaintiff, Nettie E. Jones, against defendants, Nora E. Wallace, W. R. Ramsey, and the city of Oklahoma City, to assess damages resulting from the appropriation by the city of certain real property for public use under its power of eminent domain. Nora E. Wallace and W. R. Ramsey by answer and cross-petition each claimed to be the owner of the property and sought like relief. Upon trial judgment was rendered for the defendant city, and plaintiff, Nettie E. Jones, and de-

fendants Nora E. Wallace and W. R. Ramsey separately appeal.

The facts in this case are in many ways very similar to those in the case of Oklahoma City v. Local Federal Sav. & Loan Ass'n et al., 192 Okla. 188, 134 P. 2d 565. The land here involved lies near the land involved in that case and consists of the north 40 feet of lots 27 and 28 in block 21, original townsite of Oklahoma City, and a strip of land 10 feet wide, adjacent thereto on the north, the south half of a former alley. The tracts involved in both cases are now part of an area commonly known in Oklahoma City as civic center, and were formerly part of the right of way of certain railroad companies. The city of Oklahoma City acquired these parcels, together with the other lands comprising the right of way, by quitclaim deed from the railroad companies, dated December 4, 1928, and took possession thereunder on December 4, 1930.

On May 8, 1891, Eugene Wallace was the owner of the said lots. On that date he and his wife conveyed the north 40 feet thereof to the railroad company by deed, the material portions of which are as follows:

"That the parties of the first part . . . do by these presents remise, release and quit claim unto the said party of the second part and to its successors and assigns, all their right, title, interest, claims and demand in and to the following described tract, piece and parcel of land . . . namely forty feet off the north end of lots No. 27 and 28 in block 21 . . . being intended for the use and occupation of said second party its successors and assigns as and for its right of way for the construction, operation and maintenance of its railroad and business at or upon the land hereby released and quit claimed. Provided that in case of abandonment of said premises by said second party, its successors or assigns for the purposes above mentioned the same shall revert to the grantors, their heirs or assigns. Together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining. To have and to hold the same to

the said party of the second part and to its successors and assigns to the sole and proper use, benefit and behoof of the said party of the second part, its successors, and assigns forever for the use and purposes thereinbefore set forth. . . ."

Thereafter, on October 13, 1891, Eugene Wallace and wife conveyed said lots to J. B. Wheeler by quitclaim deed, making no reference therein to the grant to the railroad company. On August 2, 1893, J. B. Wheeler and wife by quitclaim deed conveyed said lots in their entirety to J. H. Wheler. On April 8, 1899, J. H. Wheeler and wife conveyed to John Threadgill said lots "except the 40 feet off the north end of all of said lots belonging to" the railroad. By mesne conveyances executed by John Threadgill and his successors in title, each containing an exception of the north 40 feet, the south 100 feet of said lots was thereafter conveyed to the defendant W. R. Ramsey, and he was the owner of the south 100 feet at the time the railroad company abandoned the north 40 feet thereof for railroad purposes on December 4, 1930.

On August 24, 1903, the city by ordinance confirmed a former grant to the railroad company of a "right of way" through the alley between First and Second streets. This alley includes the 10-foot strip adjoining the said lots on the north, above referred to.

Nettie E. Jones is the sole heir of J. H. Wheeler, deceased, Nora E. Wallace is an heir, and the holder by assignment of the interest of all the other heirs of Eugene Wallace, deceased, said assignment being in the form of a quitclaim deed dated June 27, 1932.

Nettie E. Jones, Nora E. Wallace, and W. R. Ramsey each contends that he or she was the owner of the land involved on December 4, 1930, when the city took possession thereof, and each claims the right to receive whatever compensation may be awarded therefor in the condemnation proceeding. The bases of their various contentions are as follows:

Nora E. Wallace contends that the right reserved by Eugene Wallace, when he conveyed the land to the railroad company on May 8, 1891, was no more than a right of re-entry for breach of a condition subsequent; that under the statutes in force at that time such right was not transferable, and that the quitclaim deed of October 13, 1891, from Wallace to J. B. Wheeler, although purporting to convey all of said lots, did not operate to transfer, and was not an attempt to transfer, such right of re-entry; and that such right resides in her as his heir and as assignee of his other heirs.

Nettie E. Jones contends that the deed of Wallace to the railroad company conveyed merely an easement, and that he retained the servient fee, which was alienable; that if not an easement, the estate conveyed was at most a determinable fee upon conditional limitation and not a determinable fee upon condition subsequent; that after such conveyance there remained in Wallace, not a mere right of re-entry, but an estate in reversion, which was alienable; and that J. H. Wheeler acquired such servient fee or reversionary estate by the conveyances from Wallace and J. B. Wheeler conveying the lots to him in their entirety, but that J. H. Wheeler expressly excepted such estate by his deed of April 8, 1899, to John Threadgill, and that such servient fee or estate did not pass thereby, but remained in him and descended to her as his heir.

W. R. Ramsey agrees with the contentions of Nettie E. Jones as to the nature of the estate retained by Wallace in his deed to the railroad company but contends that the deed from J. H. Wheeler to John Threadgill of April 8, 1899, whereby he conveyed said lots "except the 40 feet off the north end belonging to" the railroad, did not clearly express an intention to reserve the servient fee or reversionary estate, and that since J. H. Wheeler thereafter owned no other land adjacent to the right of way, such estate, under the doctrine of Cuneo v. Champlin Refining

Co., 178 Okla. 198, 62 P. 2d 82, passed to John Threadgill with the fee to the adjoining south 100 feet of the lots, and thence by mesne conveyances to him.

1. Several of the contentions thus made have been settled by our decision in the case of Oklahoma City v. Local Federal Sav. & Loan Ass'n, above. In that case we held that a deed, identical in form with that of May 8, 1891, from Wallace to the railroad company, conveyed a determinable fee upon condition subsequent, and not a determinable fee upon conditional limitation (for a good statement of the distinction between the two, see that case), and that the grantor thereafter had no estate in the land so conveyed, but only a power to declare a forfeiture of the estate for condition broken, called a right of re-entry.

On May 8, 1891, the General Statutes of the Territory of Oklahoma of 1890 were in force and the effect of the deed given on that date is controlled thereby. Oklahoma City v. Local Federal Sav. & Loan Ass'n, above. By section 6651 thereof it was provided:

"A mere right of re-entry, or re-possession for breach of a condition subsequent, cannot be transferred to any one except the owner of the property affected thereby."

It is thus apparent, and we hold, that the right of re-entry remaining in Eugene Wallace and his heirs after his deed of May 8, 1891, to the railroad company, was, by virtue of such statute, inalienable to any one except the railroad company, and his quitclaim deed of October 13, 1891, to J. B. Wheeler, although purporting to convey said lots in their entirety, did not operate to convey such right of re-entry.

This disposes of the claims of Nettie E. Jones and W. R. Ramsey, who claim through J. B. Wheeler, and whose claims of title are based on the premise that the rights of Wallace passed to Wheeler by such deed.

2. The city contends, however, that the owner of a mere right of re-entry upon breach of a condition subsequent, not only could not transfer such right in 1891, but that any attempt to transfer it operated to extinguish such right completely, and to vest an estate in fee simple in the holder of the theretofore defeasible fee. It then asserts that when Eugene Wallace conveyed said lots in their entirely to J. B. Wheeler by quitclaim deed of October 13, 1891, such action amounted to an attempt to transfer his right of re-entry to the north 40 feet thereof, and that such right was thereby extinguished and a fee-simple title vested in the railroad company, which the city later acquired by deed.

a. The common-law rule for which the city contends is a carry-over from feudal times. While it is followed in many states despite the attacks which may be, and have been, made upon it (33 Am. Jur. 693; Tiffany, Real Property [3rd Ed.] § 209), an examination of the cases discloses that the rule is followed simply as one of precedent rather than as one of reason. See annotations in L. R. A. 1916F, 315; 109 A. L. R. 1148, at 1160; 117 A. L. R. 563; 135 A. L. R. 576. The rule is generally criticized by the text writers as being unjust and without reason. L. R. A. 1916F, 311, note; Simes, Law of Future Interests, Vol. 3, p. 163; 32 Michigan Law Review 415. The courts of Oregon and Illinois have in recent years refused to hold that an attempted conveyance of the analogous possibility of reverter, after a determinable fee upon conditional limitation, operates to destroy the right. Pure Oil Co. v. Miller-McFarland Drilling Co., 376 Ill. 486, 34 N. E. 2d 854, 135 A. L. R. 567; Magness v. Kerr et al., 121 Ore. 373, 254 P. 1012. And in Simes, Law of Future Interests, vol. 3, at page 163, it is said that the modern trend toward alienability of future interests "would probably lead a court in a jurisdiction where the question is still an open one to declare that an attempt at alienation of a right of entry for breach of condition does not forfeit the interest." The rule is of such ancient origin that the reasons originally given therefor now seem to be un-

known, but it is thought that it grew out of the sweeping effect of the old conveyances by feoffment and fine and recovery. L. R. A. 1916F, 318, note. In any event no reason for the rule exists today, and none existed in 1891. Chapter 29 of the Statutes of the Territory of Oklahoma of 1890 contained a number of maxims of jurisprudence to aid the courts in applying the law. The first of these was that "when the reason of a rule ceases, so should the rule itself.". Statutes of Oklahoma of 1890, § 2685. We decline, therefore, to follow the common-law rule.

b. Furthermore, since Wallace had formerly owned all of lots 27 and 28, and had conveyed only the north 40 feet thereof on condition subsequent, retaining the south portion, his deed of October 12, 1891, to J. B. Wheeler, although describing the lots in their entirety, did not amount to an attempt to convey the right of re-entry. By maxim 28 contained in Statutes of Oklahoma of 1890, § 2685, the rule that "superfluity does not vitiate" was enjoined upon the courts. In Restatement, Property, what we have called a "right of re-entry" is denominated a "power of termination." The rule is stated therein in vol. 2, at page 577, as follows:

"A power of termination is destroyed by attempting to make such a transfer as is forbidden by the rule stated in this section. When a transferor transfers a part only of his land subject to a condition subsequent, and later makes a conveyance which, by its metes and bounds description, includes the land as to which the power of termination has been reserved, such later conveyance is not an attempt to transfer the power of termination, despite the inclusiveness of the description." (Note— this rule applies only where such right of re-entry may not be transferred to a third person.)

We hold, therefore, that the deed of October 13, 1891, from Wallace to Wheeler, did not destroy the right of re-entry, but that such right remained in Wallace and now resides in Nora E. Wallace.

3. The city next contends that although it acquired the property by deed, such deed was given in lieu of condemnation, and that in reality the city acquired the land by condemnation proceedings. It then asserts that even though the right of re-entry was not extinguished by the deed of October 13, 1891, from Wallace to Wheeler, Nora E. Wallace is nevertheless entitled to nothing, because the owners of rights of re-entry are not entitled to compensation in condemnation[1] proceedings against the owners of the fee. In the case of Oklahoma City v. Local Federal Sav. & L. Ass'n, above, we held that the proceedings whereby Oklahoma City obtained title to this land were not condemnation proceedings and could not be so considered for the reason that the statutes do not authorize a municipality to condemn for park purposes property occupied by a railroad company and used for its tracks and station grounds. This contention is, therefore, without merit.

4. Nora E. Wallace contends that her right of re-entry extends also to the south half of a former alley lying adjacent to the northern boundary of said lots 27 and 28, consisting of a strip of land ten feet in depth and extending the width thereof. By the ordinance of September 21, 1903, the city confirmed a former grant of April 27, 1891 (which is not in the record) to the railway company of a "right of way" through this alley, and Mrs. Wallace contends that the alley was thereby vacated and that the south half thereof reverted to the owners of the abutting lots. We do not agree. By the provisions of section 610 of the Statutes of Oklahoma of 1890, cities of the first class were permitted to grant streets to "any other public use whenever deemed necessary or expedient." Under similar statutes enacted since then, cities have the undoubted power to grant to railroad companies the use of streets for railroad purposes. McKay v. City of Enid, 26 Okla. 275, 109 P. 520, 30 L. R. A. (N. S.) 1021; Oklahoma Tool & Supply Co. v. City of Bartlesville, 101 Okla. 103, 223 P. 637.

If the owner of the abutting property was damaged by the granting of such use to the railroad company, he had a right to have damages assessed therefor under the provisions of section 610, above, but we know of no case holding that the mere granting of a right of way to a railroad company through a street, even though it includes the entire width thereof, amounts to a vacation of the street, and counsel have cited none. Cases cited by counsel are those where the streets have been specifically vacated by ordinance. In the case of Atchison, T. & S. F. Ry. Co. v. City of Shawnee, 183 Fed. 85, it is said that:

"A railroad right of way along a street and a vacation of the street are wholly different things. In the former the highway in its public character continues, and the railroad is but a phase of the public use to which it is devoted. The highway still remains subject to municipal regulation."

There is nothing in the ordinance to indicate that the alley was intended to be thereby vacated, or that the public was to be thereafter prohibited from traveling along it.

We are therefore of the opinion, and hold, that the alley was not vacated by the ordinance of September 21, 1903, and that the right of re-entry of Mrs. Wallace does not extend thereto.

The judgment is reversed and remanded, with instructions to proceed not inconsistently with the views herein expressed.

CORN, C. J., and OSBORN, DAVISON, and ARNOLD, JJ., concur. DAVISON, J., concurs because of the rule of stare decisis. GIBSON, V. C. J., and RILEY, BAYLESS, and WELCH, JJ., dissent.

---

GIBSON, V. C. J. (dissenting). I agree with the majority opinion that the estate conveyed by Eugene Wallace to the railroad company was a determinable fee upon a condition subsequent, leaving in Wallace and his heirs a mere possibility of reverter upon re-entry. I further agree that such right was not transferable by the grantor or his heirs to anyone other than the owner of the fee.

However, with reference to the effect of an attempted conveyance to a stranger to the title of the right reserved in the deed, my opinion is that we should adhere to the common-law rule prevailing in almost all jurisdictions where, like our own, the statutes remain silent on the subject.

In the absence of statute to the contrary, an attempted conveyance has always been regarded as a renunciation and extinguishment of the right of reverter and re-entry, thus placing in the owner of the determinable fee an absolute estate in fee simple. In 19 Am. Jur. 546, § 83, where this subject receives recent treatment, it is said:

"The rule has grown up and has been followed in all cases in which the question has arisen that in the absence of a statute changing the rule not only is the right of re-entry not transferable, but an attempt to transfer it to a third person has in addition the effect to destroy the right totally, even as far as the grantor and his heirs are concerned."

Notwithstanding the personal criticism leveled at the rule by the annotator in L. R. A. 1916F, 311, there was, and still remains, a real and substantial reason why the possibility of reverter on re-entry should become extinguished upon an attempted transfer thereof to one other than the owner of the determinable fee. Since the right to declare a forfeiture and to re-enter is not an estate, its transfer falls within the classification of transactions which in equity jurisprudence was frowned upon as savoring of the character of champerty or maintenance. 11 C. J. 235, § 8. Had our own statute been in operation at the time the deed in question was executed, it would have been subject to grave suspicion as constituting a champertous conveyance. 21 O. S. 1941 § 548.

In such case, since there existed no estate capable of being conveyed, and any attempted conveyance being in its nature champertous, the transaction was not to be undone by the courts so as to place the parties in their former positions, but, to avoid the taint of champerty, and to give to the grantor the presumption of good intentions, the attempted conveyance was treated as a release, or a relinquishment, or as an ordinary disclaimer on the part of the grantor of any further claim or demand upon the land.

The statement in the majority opinion that "in any event no reason for the rule exists today and none existed in 1891" is not supported by authority or convincing argument. The common-law principle constituted a rule of action in Oklahoma in 1891. Refusal to follow the rule should be based on something more than inability to understand it.

In my opinion we should not adopt the purported rule quoted in the majority opinion from Restatement of the Law, to the effect that where an owner transfers a portion only of his land on condition subsequent and later executes a conveyance which, by metes and bounds, includes the land on which he reserved the power of termination, the subsequent conveyance is not an attempt to transfer such power (Id. Property, Future Estates, Pt. 2). The text gives no reason for the statement, and cites no authority. And it would seem not to have any reason to support it. The subsequent all-inclusive conveyance should be considered at least prima facie evidence of an intention and attempt to convey the power of termination. If the tract formerly conveyed on condition subsequent was included in the later deed by mistake, that would present another question.

The majority opinion calls attention to the fact that the Supreme Court of Illinois has recently refused to apply the rule that an attempted conveyance of a naked possibility of reverter destroys the same. Pure Oil Co. v. Miller-McFarland Drilling Co., 376 Ill. 486, 34 N. E. 2d 854, 135 A. L. R. 567. There, the conveyance was held to be, and actually was, a determinable fee on conditional limitation, which, unlike an estate on condition subsequent, does not require re-entry in order to bring about the reverter. The court very properly refused to apply the rule that the subsequent conveyance destroyed the right to reverter.

It is also indicated in the majority opinion that the Supreme Court of Oregon has departed from the rule formerly announced in Wagner v. Wallowa County, 76 Ore. 453, 148 P. 1140, L. R. A. 1916F, 303, to the effect that an attempted conveyance of the right of reverter under a grant of a determinable fee on condition subsequent destroyed the right. The decision referred to is Magness v. Kerr, 121 Ore. 373, 254 P. 1012.

In the latter case the court defined the condition in the original deed as one of limitation and not a condition subsequent, and refused to extend the rule announced in the Wagner Case, supra, to the subsequent conveyance. The two cases are not in point here:

Inasmuch as our statute is silent on the effect of an attempted conveyance of a possibility of reverter, the common-law principle that such attempted conveyance destroys the condition constitutes a rule of action in this state. (Coline Oil Co. v. Cannon, 144 Okla. 133, 289 P. 763.)

In Halpin v. Rural Agricultural School Dist. No. 9, Gaines Twp., 224 Mich. 308, 194 N. W. 1005, it was said:

"The authorities appear to hold, without exception, that an attempt upon the part of the grantor to convey this possibility of reverter before the condition is broken . . . , extinguishes the right . . . to re-enter after condition is broken."

That rule has been followed a number of times by the Michigan court and as recently as 1938 in Dolby et al. v. Dillman, 283 Mich. 609, 278 N. W. 694, 117 A. L. R. 538.

The same rule obtains in Colorado, Kansas, Maine, Massachusetts, Michigan, New York, Ohio, Oregon, Tennessee, and Texas.

Believing, as I do, that we should follow that rule in determining the effect of the deeds executed in 1891, I am of the opinion that the attempted conveyance by Eugene Wallace to J. B. Wheeler on October 13, 1891, destroyed Wallace's right of re-entry to the north 40 feet of the lots in question, and thereby the railroad company became the owner of the unconditional fee-simple title thereto. This title subsequently passed to and is now held by Oklahoma City.

I, therefore, respectfully dissent.